**Opinion issued October 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00300-CV

_____

## IN THE INTEREST OF B.M.C. AND C.M.C., Children

---

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2015-01931J

---

## MEMORANDUM OPINION

The trial court terminated the parental rights of S.M.C., *a/k/a* S.M.E. ("Mother"), to her two children, B.M.C. and C.M.C. In three issues, Mother argues that the evidence was legally and factually insufficient to support the trial court's findings supporting termination of her parental rights pursuant to Texas Family Code subsections 161.001(b)(1)(E) and (O) and 161.001(b)(2). We affirm.

## Background

B.M.C. and C.M.C. were born on August 9, 2009, and May 21, 2012, respectively. The Texas Department of Family and Protective Services ("DFPS") became involved in the children's lives in 2012 when Mother tested positive for cocaine and marijuana at the birth of her youngest daughter, C.M.C., who also tested positive for drugs in her system at the time of her birth. Mother was required to move out of her home temporarily while C.D.F.C. ("Father") cared for both children. After completing a safety plan and submitting to numerous drug tests with negative results, Mother was allowed to move back in with her children and the 2012 case was closed.[1]

On February 18, 2015, DFPS received another referral regarding the children based on allegations of neglectful supervision. While at school, B.M.C. was overheard telling her classmates that her father had choked her mother. When B.M.C. was pulled aside and questioned further, she demonstrated the act of choking someone by placing her hand on her own neck, asserting that that was what her father had done to her mother. She stated that her mother was held down

---

[1] The trial court also terminated the parental rights of the children's father, C.D.F.C. Father filed a separate notice of appeal on April 4, 2016, which was assigned appellate cause number 01-16-00308-CV. In an opinion dated June 2, 2016, this Court granted Father's unopposed motion to dismiss his appeal, and, accordingly, he is not a party to this appeal.

and choked and that the choking only stopped when B.M.C. went and requested help from neighbors who then intervened.

During a DFPS interview, Mother admitted to the domestic violence and described an argument in which both she and Father became physically violent with one another. She admitted that they frequently fought in front of the children, even while the children were screaming and crying. Mother admitted that she had been diagnosed with bipolar disorder, depression, and anxiety, but that she had not taken the medication prescribed to help her with her mental health issues for four months prior to the interview.

The DFPS investigator observed that the home that Mother, Father, and the children lived in had physical damage in the form of holes in the walls and floors, and Mother admitted to the investigator that these holes were the result of the parents' fighting. Both Mother and Father were subjected to drug testing on February 25, 2015, and the results for both were positive for cocaine.

With the parents' agreement, DFPS placed the children in a Parental Child Safety Placement with a family friend, Tanesha Cooks. On March 24, 2015, Cooks requested that the children be removed because Mother came to Cooks' home and engaged in a shouting match through the door, demanding to see the children. Mother also made threatening phone calls and sent threatening text messages. Numerous efforts were made by DFPS to find another voluntary placement, but for

various reasons, including income and criminal history, the relatives suggested by the parents were found to be unsuitable. The children were then placed in a foster home, and the parents were given supervised visitation. The parents had originally visited the children together, but due to an incident involving a violent argument between the parents during the course of the visit, the parents were subsequently required to visit the children separately.

On March 25, 2015, DFPS filed a petition seeking conservatorship of the children and termination of Mother's and Father's parental rights to the children. The trial court signed an emergency order that same day and held an adversary hearing in which it ruled that DFPS should remain the temporary managing conservator of the children. On May 19, 2015, the trial court held a status hearing at which Mother appeared and was represented by counsel. The trial court approved DFPS's service plan and ordered Mother to complete it. Both parents were warned by the court that failure to complete the service plan could result in termination of their parental rights.

Under the court-ordered service plan, Mother was required to maintain steady employment and housing and to abstain from criminal activity. Specifically, Mother was required to complete domestic violence and parenting courses, to submit to psychological and psychiatric evaluations, to participate in individual and substance abuse counseling, and to submit to random drug screenings. Mother

completed some, but not all, of these requirements, and DFPS moved forward with its plans to terminate the parents' rights to the children.

At the trial on March 1, 2016, DFPS presented evidence that Mother had not completed either the individual therapy or the substance abuse training. DFPS caseworker Chequetta Deadmon testified that she believed that Mother could have completed the court-ordered service plan in the time given. Deadmon also testified that Mother had previously participated in a drug treatment program, ending in September 2015, but Mother had continued to test positive for drugs throughout the course of participating in that program.

Deadmon testified that Mother tested positive for cocaine, benzodiazepines, and alcohol on April 7, 2015. On May 19, 2015, Mother again tested positive for cocaine, benzodiazepines, and alcohol, as well as synthetic marijuana. On August 20, 2015, Mother tested positive for synthetic marijuana, cocaine, benzodiazepines, and alcohol. On November 10, 2015, Mother tested positive for synthetic marijuana, cocaine, and benzodiazepines. Deadmon testified that she made diligent efforts to engage Mother and get her services completed and that termination of parental rights would be in children's best interest because of Mother's lack of sobriety since the beginning of the case, her instability, and the lack of a safe and appropriate home.

Deadmon testified that the children were doing well in their current foster home. Deadmon stated that the children had no special needs and that the foster parents were meeting all of the children's basic psychological and emotional needs. Deadmon noted that B.M.C. was in first grade and C.M.C was three years old at the time of trial. The children were getting needed dental work, going to school and daycare, and receiving love and support from their foster family. Deadmon testified that the foster parents had intervened in the case, wanted to adopt the children, and that DFPS supported this goal.

Etta Pickett, an Advocacy Coordinator at Child Advocates, Inc., served as the children's guardian ad litem and testified that their current placement was meeting the children's physical and emotional needs. Pickett stated that Child Advocates supported the motion for the termination of parental rights and adoption by the foster parents. Pickett testified that Child Advocates believed parental termination was in the children's best interest because the parents engaged in ongoing domestic violence both before and after the children's removal and because there were observations of escalated verbal aggression in front of the children during visits. Pickett testified that it was important that Mother receive the necessary treatment for her substance abuse issues. She noted that B.M.C. had issues with her teeth due to inappropriate care and diet for a child of that age and had to undergo significant dental care. Pickett added that B.M.C. was in first grade,

6

was consistently attending school, was engaged and loved her classes, and was making a lot of progress. She also noted that the children referred to their foster parents as mom and dad.

The foster mother testified that the children had been in her home for eleven months and that the children had bonded with her family, that she wanted to adopt the children, that the children were involved in extracurricular activities, and that she took care of their physical and emotional needs.

Mother testified that she had a "strong" bond with her children. She acknowledged that she had a substance abuse problem and had tried to get help. She testified that some of the drug tests performed for her caseworker and psychiatrist were negative and that she had wanted to attend a second substance abuse treatment program. However, she was unable to do so prior to trial because DFPS did not set anything up until two weeks before trial. Mother stated that she had an apartment.

The trial court found clear and convincing evidence that Mother violated Family Code subsections 161.001(b)(1)(E) and (O) and that termination of her parental rights to both children was in the children's best interest. Accordingly, the trial court rendered its final judgment terminating Mother's parental rights to B.M.C. and C.M.C. and naming DFPS as the permanent managing conservator. This appeal followed.

## Sufficiency of the Evidence

In three issues, Mother challenges the sufficiency of the evidence supporting the trial court's determinations that termination of her parental rights was proper under Family Code subsections 161.001(b)(1)(E) and (O) and that, pursuant to section 161.001(b)(2), termination of her parental rights was in the children's best interest.

### A.    Standard of Review

In a case to terminate parental rights brought by DFPS under section 161.001, DFPS must establish, by clear and convincing evidence, (1) that the parent committed one or more of the enumerated acts or omissions justifying termination and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (Vernon Supp. 2016); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In conducting a legal-sufficiency review in a parental-rights-termination case brought by DFPS under section 161.001, we must look at the entire record to determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction

about the truth of the matter on which DFPS bore the burden of proof. *See In re J.O.A.*, 283 S.W.3d at 344 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*; *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In conducting a factual-sufficiency review, we view the disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" regarding the finding under review. *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

DFPS must establish both elements—that the parent committed one of the acts or omissions enumerated in section 161.001(b)(1) and that termination of parental rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b); *In re C.H.*, 89 S.W.3d at 23. Termination may not be solely based on

9

the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, "[o]nly one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

**B.     Findings Pursuant to Section 161.001(b)(1)(E)**

Subsection 161.001(b)(1)(E) provides that a parent's rights can be terminated when she has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The parent's conduct must cause the endangerment, and the endangerment must be the result of a voluntary, deliberate, and conscious course of conduct by the parent rather than a single act or omission. *Jordan*, 325 S.W.3d at 723; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *Jordan*, 325 S.W.3d at 723; *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). Endangerment of a child does not have to be established as an independent proposition but can be inferred from parental misconduct alone. *In re T.N.*, 180 S.W.3d at 383 (citing *Boyd*, 727 S.W.2d at 533).

"'[E]ndanger' means more than a threat of metaphysical injury or [the] potential ill effects of a less-than-ideal family environment, but that endangering conduct need not be directed at the child," and it is not necessary that the child actually suffer injury. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012) (citing *Boyd*, 727 S.W.2d at 533); *In re T.N.*, 180 S.W.3d at 383 (citing *In re M.C.*, 917 S.W.2d at 269); *see also In re J.O.A.*, 283 S.W.3d at 345 (holding that endangering conduct is not limited to actions directed toward child); *Jordan*, 325 S.W.3d at 723 (endangering conduct may be inferred from parental misconduct even if conduct is not directed at child and child suffers no actual injury). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct," and courts may look to evidence of parental conduct both before and after a child's birth and before and after a child's removal from the home to determine whether termination is appropriate. *In re J.O.A.*, 283 S.W.3d at 345 (citing *In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied)); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (explaining that relevant conduct may occur either before or after child's removal from home).

Here, DFPS presented evidence that Mother's conduct, particularly her continued drug use and participation in family violence, endangered her children. C.M.C. was born with cocaine in her system because Mother used drugs while she

11

was pregnant. After DFPS established a family safety plan and Mother had completed one substance abuse treatment program, she continued to test positive during court-ordered drug screenings. Although Mother had enrolled in a second drug treatment program, both DFPS and Child Advocates testified that Mother had not demonstrated an ability to maintain her sobriety for an appropriate amount of time.

DFPS also presented evidence regarding the environment in which the children were raised. The children came into DFPS care for the second time in 2015 because of their exposure to domestic violence in the home. Upon investigation, Mother admitted to participating in domestic violence. She stated that she and Father would attack each other in front of the children while the children were crying and screaming and that the fights were so violent that they resulted in damage to the family home. The children had to be removed from the parental safety placement with Mother's friend Cooks after Mother arrived at Cooks' home, shouting and demanding to see her children. And while the children were under DFPS care, caseworkers observed interactions between the Mother and Father that resulted in the parents having to visit their children separately.

Accordingly, viewing the entire record in the light most favorable to the trial court's finding, we conclude that the evidence supports a firm belief or conviction that Mother "engaged in conduct or knowingly placed the child[ren] with persons

who engaged in conduct which endanger[ed] the physical or emotional well-being of the child[ren]." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re J.O.A.*, 283 S.W.3d at 345.

Mother argues that the evidence is insufficient to demonstrate that she engaged in conduct endangering her children's well-being because she did not engage in conduct or a course of conduct that endangered the children. Rather, she argues that Father committed the domestic violence that resulted in the children coming into DFPS care and that she was a victim of Father's violence. However, the evidence, including Mother's own admissions, does not support this allegation. Mother admitted to the DFPS investigator that both parents would physically attack each other in the children's presence, even as the children cried, to the extent that they put holes in the walls and floors of their home. During supervised visitation, the relationship between Mother and Father was so contentious that the visits had to be altered to avoid confrontation. There is no evidence that the tendencies for domestic disputes by either parent was resolved. *See Walker*, 312 S.W.3d at 617 ("Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under section [161.001(b)(1)(E)] has been established.").

Furthermore, Mother's argument does not address the evidence that she engaged in ongoing substance abuse. Both Mother and C.M.C. tested positive for

drug use at the time of C.M.C.'s birth. DFPS intervened, Mother attended drug treatment, and the children were returned to Mother's care. Mother again tested positive for drug use beginning in February 2015, when the children were referred to DFPS because of B.M.C.'s report of domestic violence. In spite of receiving subsequent drug treatment and other services, Mother repeatedly tested positive for illegal drugs during the course of DFPS's involvement with her family. Mother's failure to remain drug-free while under DFPS supervision supports the trial court's finding of endangering conduct. *See id.* at 617–18 (failure to remain drug free constitutes endangering conduct, even without direct evidence that parent's drug use injured children, because it exposes children to possibility that parent may be impaired or imprisoned); *In re T.N.*, 180 S.W.3d at 383 ("A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is . . . clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.").

Thus, even considering the conflicting evidence, we cannot conclude that the contrary evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction that Mother engaged in conduct endangering her children's well-being. *See In re J.O.A.*, 283 S.W.3d at 345.

Because we conclude that the evidence is legally and factually sufficient to support the trial court's finding pursuant to Family Code section 161.001(b)(1)(E),

we need not address Mother's second issue challenging the other basis for termination of her parental rights under section 161.001(b)(1)(O). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

We overrule Mother's first and second issues.

## C.    Finding on Children's Best Interest

In her third issue, Mother argues that the evidence was legally and factually insufficient to support the trial court's conclusion that termination of her parental rights was in the children's best interest.

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (Vernon Supp. 2016). The Family Code and the Texas Supreme Court have both set out numerous factors to be considered in determining a child's best interest, including, among others: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placement; the magnitude, frequency and circumstances of harm to the child, including current and future danger to the child; whether there is a history of substance abuse by the

child's family; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; the child's family's demonstration of adequate parenting skills, including providing the child and other children under the family's care with minimally adequate health and nutritional care, guidance and supervision, and a safe physical home environment; the stability of the home or proposed placement; and the parent's acts or omission indicating an improper parent-child relationship and any excuses for the acts or omissions. *See id.* § 263.307(b); *In re R.R.*, 209 S.W.3d at 116; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest. *See In re C.H.*, 89 S.W.3d at 27. The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *Id.* at 28; *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Furthermore, the best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *See In re N.R.T.*, 338 S.W.3d at 677. The best-interest analysis evaluates the best interest of the child, not the parent. *Id.*

Here, multiple factors support the trial court's finding that termination of Mother's parental rights was in the children's best interest. DFPS presented evidence regarding Mother's drug abuse and endangerment of the children, as discussed above. DFPS presented evidence that, despite successfully completing a drug treatment program, Mother failed to complete her family service plan by failing to remain drug free, failing to obtain and maintain stable employment, and failing to complete either the individual therapy or the substance abuse training. Mother herself admitted to a DFPS investigator that she and Father engaged in domestic violence in which they would sometimes assault each other and that the children were exposed to this. DFPS also presented evidence of the extent of Mother's history of mental health issues and drug abuse, her unwillingness to complete the necessary treatment or other court-ordered services, and her lack of parenting skills. *See* TEX. FAM. CODE ANN. § 263.307(b) (providing that, in determining best interest of child, courts should consider circumstances of harm, history of substance abuse, willingness to complete services, demonstration of parenting skills, and any excuse for prior acts or omissions); *In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (holding that findings under section 161.001(b)(1)(O) that parent failed to complete court-ordered services can support best interest finding); *Holley*, 544 S.W.2d at 371–72 (providing that, in determining best interest of child, courts should examine stability of home and

17

proposed placement and parent's acts or omissions indicating improper relationship).

DFPS also presented evidence that B.M.C. was in first grade and C.M.C was three years old at the time of trial. DFPS also presented evidence that B.M.C. had been exposed to circumstances that were inappropriate for a child of her age and development when she observed domestic violence between her parents and had to seek help from her neighbors. B.M.C. also had not received adequate dental care. DFPS presented evidence that C.M.C. was born with drugs in her system as a result of Mother's prenatal drug use. Thus, the children's ages and physical and mental vulnerabilities weigh in favor of termination of Mother's parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b); *In re R.R.*, 209 S.W.3d at 116.

Regarding the children's placement at the time of trial, DFPS indicated that the children's needs were being met by their foster parents, that they had bonded with the foster parents, and that the foster parents wished to adopt them. DFPS presented evidence that the children were getting needed dental work, going to school and daycare, and receiving love and support from the foster family. Thus, the stability of the proposed placement also weighs in favor of terminating Mother's parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b) (providing courts should consider stability of proposed placement in determining children's best interest).

Viewing the entire record in the light most favorable to the trial court's finding, the evidence supports a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344; *see also* TEX. FAM. CODE ANN. § 263.307(b) (setting out non-exclusive factors to consider in making best-interest determination).

Mother argues that the evidence is insufficient to prove that the termination of her parental rights is in B.M.C. and C.M.C.'s best interest. She argues that she substantially complied with the requirements of her family service plan, and but for the irresponsible handling of the referral for substance abuse classes and counseling by DFPS, Mother would have completed all of her services. However, the Family Code "does not 'make a provision for excuses' for a parent's failure to comply with the trial court's order" to complete a family service plan, nor does it "provide a means of evaluating partial or substantial compliance with a plan." *In re S.Y.*, 435 S.W.3d 923, 928 (Tex. App.—Dallas 2014, no pet.) (quoting *In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) and *In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.)); *see also In re E.C.R.*, 402 S.W.3d at 249-50 (holding that findings under section 161.001(1)(O) that parent failed to complete court-ordered services can support best interest finding).

Mother's argument that she substantially complied with her service plan and that she was prevented from completing the plan by DFPS's failure to provide

adequate service does not create a factual dispute as to her compliance; rather, it is in the nature of an excuse for her failure to comply. *See In re C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (recognizing that mother's explanation for her failure to complete court-ordered parenting class was excuse for undisputed failure to comply with court's order and that Family Code section 161.001(b)(1)(O) "does not make a provision for excuses"); *Wilson v. State*, 116 S.W.3d. 923, 929 (Tex. App.—Dallas 2003, no pet.). And other evidence in the record contradicted Mother's testimony regarding her ability to complete her plan. Deadmon, the DFPS caseworker, testified that she believed Mother could have completed her family service plan in the time given and that Mother had participated in a drug treatment program ending in September 2015 but kept testing positive for drug use during that program. A reasonable factfinder could have chosen to believe Deadmon's testimony that Mother could have completed the family safety plan in the time given.

Mother also argues that she visited her children regularly and that she had a very strong bond with her children. However, the record also indicates that Mother engaged in domestic violence in front of her children, including an incident that was observed during supervised visitation and resulted in the parents needing to visit the children separately. And the record contains no evidence that Mother's ongoing substance abuse issues—dating back at least to DFPS's first intervention

in the children's lives in 2012 and continuing through the time of trial in March 2016—are likely to be any different going forward.

Viewing all of the evidence, as we must, we conclude that any disputed evidence was not so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. Thus, we conclude that the evidence was both legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. *See id.* at 344–45.

We overrule Mother's third issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Brown.